IRELAND v SMITH

Docket Nos. 177431, 182369. Submitted May 3, 1995, at Detroit. Decided November 7, 1995, at 9:00 A.M. Leave to appeal sought.

Jennifer Ireland brought an action in the Macomb Circuit Court against Steven Smith, seeking an order regarding child support for the minor child of the parties, who have never married or lived together. Smith responded by petitioning for custody of the child. The court, Raymond R. Cashen, J., conducted a hearing and issued an opinion and order transferring custody to Smith. The court found that there was an established custodial environment with the plaintiff and that the parties were equal with regard to all of the twelve factors contained in MCL 722.23; MSA 25.312(3) except one. With regard to that factor, factor e, the court found that the plaintiff's day-care arrangement for the child at a day-care center approved by her university, the University of Michigan, was appropriate but that the defendant's plan to have his mother provide day care for the child was better because she was a "blood relative" and not a stranger. The plaintiff appealed from that order and the defendant cross appealed from the trial court's refusal to order the plaintiff to provide child support. Docket No. 177431. The plaintiff also appealed by leave granted from an order of the chief judge of the Macomb Circuit Court, Peter J. Maceroni, J., denying the plaintiff's motion for disqualification of the trial judge. Docket No. 182369. The appeals were consolidated.

The Court of Appeals *held:*

1. The trial court's finding that there was an established custodial environment with the plaintiff is not contrary to the great weight of the evidence and must be affirmed.

2. In light of the undisputed evidence that the plaintiff's child-care arrangements are appropriate and working well, the evidence does not support the trial court's finding that the defendant's proposed, but untested, plans for the child would be

REFERENCES

Am Jur 2d, Divorce and Separation §§ 1011-1017; Judges §§ 146-167, 195; Parent and Child § 26.

See ALR Index under Bias or Prejudice; Custody and Support of Children; Judges; Recusal.

better. Moreover, an evaluation of each party's arrangements for the child's care while her parents go to school or work is not an appropriate consideration under MCL 722.23(e); MSA 25.312(3)(e). The trial court committed clear legal error in considering the acceptability of the parties' homes and child-care arrangements under factor e, which is directed to the permanence, as a family unit, of the individual parties. This factor exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other. Because the trial court's finding with regard to factor e was the basis for a change in the child's established custodial environment, the error is not harmless. The order granting a change of custody must be reversed and the matter must be remanded for reevaluation of factor e.

3. The record supports the trial court's findings with regard to the remaining factors. Those findings must be affirmed.

4. The nature and scope of the media exposure regarding this case creates an appearance of bias in this case. It would be unreasonable to expect the trial judge to put previously expressed views regarding this case out of his mind without substantial difficulty. The advancement of the interests of preserving the appearance of justice and fairness outweighs other considerations here. The decision to deny the plaintiff's motion to disqualify the trial judge must be reversed and the case must be heard on remand by a different judge.

5. The defendant's claim on cross appeal is moot.

Affirmed in part, reversed in part, and remanded in Docket No. 177431. Reversed in Docket No. 182369.

1. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD.

A trial court is prohibited from changing child custody where there is an established custodial environment unless clear and convincing evidence demonstrates that a change in custody would be in the child's best interest; the determination regarding best interest is made by weighing the sum total of twelve statutory factors; the trial court's ultimate finding regarding a particular factor is a factual finding that may be set aside if it is against the great weight of the evidence (MCL 722.23; MSA 25.312[3]).

2. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD.

Factor e of the factors to be considered in determining if it is in the best interests of a child to change the child's established custodial environment exclusively concerns whether the family unit will remain intact, not an evaluation about whether one

custodial home would be more acceptable than the other (MCL 722.23[e]; MSA 25.312[3][e]).

3. PARENT AND CHILD — CHILD CUSTODY — APPELLATE REVIEW — DE Novo.

Review de novo by an appellate court of the ultimate custodial disposition in a child custody case is inappropriate; upon a finding of error, an appellate court should remand the case for reevaluation, unless the error was harmless; on remand, the trial court should consider up-to-date information as well as any other changes in circumstances arising since the original custody order (MCL 722.28; MSA 25.312[8]).

4. JUDGES — DISQUALIFICATION.

The test for determining whether a trial judge should be disqualified is not just whether actual bias exists but also whether there is such a likelihood of bias or an appearance of bias that the judge would be unable to hold the balance between vindicating the interests of the court and the interests of the affected party; even when a judge is personally convinced that the judge is impartial, disqualification is warranted where there are circumstances of such a nature to cause doubt regarding the judge's partiality, bias, or prejudice.

The University of Michigan Law School, Women and the Law Clinic (by *Julie Kunce Field*), for Jennifer Ireland.

*Sharon-Lee Edwards,* for Steve Smith.

Amici Curiae:

*Gail Altenburg* and *Kirkland & Ellis* (by *Karen Natalie Walker, Louis Orbach,* and *Paul Brinkman*), for Student Legal Services, University of Michigan Single Parent Coalition, and Center for the Education of Women at the University of Michigan.

*Anne Argiroff,* for Michigan Legal Services.

*Judith Fox,* for Berrien County Legal Services.

*Rebecca Shiemke,* for Women's Justice Center.

*Ann Routt* and *Michael Yales,* for Legal Services of Southeastern Michigan.

*Rebecca Shiemke* and *Nancy K.D. Lemon,* for Pennsylvania Coalition Against Domestic Violence, the Alaska Network on Domestic Violence and Sexual Assault, the Domestic Violence Project, Inc./Safe House, Educators Ad Hoc Committee on Domestic Violence and Family Law, Family Violence Intervention Services Program, George Washington University National Law Center-Domestic Violence Advocacy Project, Kansas Coalition Against Sexual and Domestic Violence, Louisiana Coalition Against Domestic Violence, Lutheran Social Services-South Region, National Center on Women and Family Law, National Organization for Men Against Sexism, Ohio Domestic Violence Network, The Oklahoma Coalition Against Domestic Violence and Sexual Assault, Oregon Coalition Against Domestic and Sexual Violence, Virginians Against Domestic Violence, Wisconsin Coalition Against Domestic Violence, and the Women's Coalition of St. Croix.

*Evanne L. Dietz* and *Crowell & Moring* (by *Luther Zeigler, Phyllis A. Jaudes,* and *Daryl A. Lander*) (Women's Legal Defense Fund, by *Judith L. Lichtman, Donna R. Lenhoff,* and *Joan Entmacher,* of Counsel), for the Women's Legal Defense Fund, Feminist Majority Foundation, NOW Legal Defense and Education Fund, National Center on Women and Family Law, National Council of Jewish Women, Inc., National Council of Negro Women, Inc., Northwest Women's Law Center, and Women's Law Project in Support of Appellant.

*Frederick R. Fahrner,* and *Carol S. Stevenson* and *Elissa S. Gershon,* for the Child Care Law

Center (*Nancy Duff Campbell* and *Deborah L. Brake,* for the National Women's Law Center, of Counsel), for Child Care Law Center, National Women's Law Center, American Medical Women's Association, Inc., Child Care Action Campaign, Child Welfare League of America, Children's Defense Fund, Equal Rights Advocates, National Association of Commissions for Women, National Center for the Early Childhood Work Force, National Center on Women and Family Law, Northwest Women's Law Center, Pennsylvania Coalition Against Domestic Violence, San Francisco Women Lawyers Alliance, and United Jewish Appeal-Federation of Jewish Philanthropies of NY, Inc.

*Klimaszewski & Street* (by *Barbara Klimaszewski*) and *Amy R. Sabrin, Nancy J. McGlynn,* and *Katharine R. Stollman,* for National Organization For Women, Inc., and Michigan Conference National Organization For Women, Inc.

*Michele Kelly* and *Paul D. Ghinger,* for National Emergency Civil Liberties Committee, My Sister's Place, New York State Coalition on Women's Legal Issues, New York State Coalition Against Domestic Violence, and Nassau County Coalition Against Domestic Violence.

*Bookholder & Bassett* (by *Scott Bassett*), and *Mika, Meyers, Beckett & Jones* (by *Elizabeth Bransdorfer*), for American Civil Liberties Union, Women Lawyers Association of Michigan, International Union, United Automobile Workers, Michigan Nurses Association, Michigan Federation of Teachers and School Related Personnel, AFT, AFL-CIO, National Lawyers Guild, Detroit Chapter, and Women's Rights Project, American Civil Liberties Union Foundation.

Before: Neff, P.J., and Gribbs and R. D. Gotham,* JJ.

Gribbs, J. Plaintiff appeals as of right in Docket No. 177431 from a circuit court order changing custody of the parties' daughter to defendant. Defendant has filed a cross appeal. In a consolidated appeal, Docket No. 182369, plaintiff also appeals by leave granted an order of the chief judge of the circuit court denying plaintiff's motion for disqualification of the trial judge. Numerous amici curiae briefs have been filed and considered. We affirm in part, reverse in part, and remand for further proceedings.

On April 22, 1991, plaintiff gave birth to a daughter. At the time, both plaintiff and defendant-father were sixteen years old. They never married or lived together. Defendant signed papers agreeing to place the child for adoption, and she was placed in foster care. Within about three weeks, however, plaintiff decided to raise the child herself. At the time of the child's birth, and until September 19, 1993, both parties lived with their respective families. Plaintiff lived with her mother and younger sister, who helped her raise the child. Defendant continued to live with his parents. Both parties continued in high school with apparently normal pursuits, including sports, cheerleading, dating, and partying, and both eventually graduated. Defendant did not attempt to see his daughter during the first year of her life. Since that time, defendant has visited the child regularly.

In the fall of 1993, plaintiff and the child moved to Ann Arbor, where plaintiff began attending the University of Michigan on a scholarship. Plaintiff and the child lived in an apartment in the university family housing unit. When plaintiff attended

* Circuit judge, sitting on the Court of Appeals by assignment.

class, the child was cared for in university-approved day care. Plaintiff and the child came back to plaintiff's mother's home during the spring of 1994 for this custody trial, and plaintiff returned to the University of Michigan with her daughter in September 1994. Defendant has continued to live in his parents' home throughout these proceedings.

On January 29, 1993, plaintiff filed an action for child support. Defendant then petitioned for custody. The trial court conducted a several-day evidentiary hearing in May and June 1994, and issued a written opinion on June 27, 1994, transferring custody to defendant. The trial court found that there was an established custodial environment in plaintiff and found the parties equal or the proofs neutral with regard to all but one of the factors contained in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* Because defendant argues on cross appeal that the trial court was correct in its disposition but erred in virtually all its findings, we will review each aspect of the trial court's decision.

A court may not change the established custodial environment of a child unless clear and convincing evidence is presented that it is in the best interest of the child. *Baker v Baker,* 411 Mich 567; 309 NW2d 532 (1981). Section 7(1)(c) of the Child Custody Act explains that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c); MSA 25.312(7)(1)(c).

Whether a custodial environment is established is a question of fact. *Baker, supra; Hayes v Hayes,* 209 Mich App 385, 387-388; 532 NW2d 190 (1995); *Wilson v Gauck,* 167 Mich App 90; 421 NW2d 582

(1988); *Sedlar v Sedlar,* 165 Mich App 71; 419 NW2d 18 (1987). Findings of fact in a child custody case are reviewed under the great weight of the evidence standard. MCL 722.28; MSA 25.312(8). *Fletcher v Fletcher,* 447 Mich 871; 526 NW2d 889 (1994). Under that standard, the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction. *Id.* at 878.

The trial court's finding in this case that there was an established custodial environment in plaintiff is not contrary to the great weight of the evidence. As the trial judge noted, the child has lived with her mother for her entire life. Although plaintiff's mother and sister acted as a support group for plaintiff and the child, plaintiff has been a consistent part of the child's life since the beginning. Most of the necessities of life have been provided by plaintiff's mother. Neither plaintiff nor defendant earns a living wage, and defendant's parents acknowledge that they have not provided any financial support for plaintiff or the child, although they have purchased numerous items for the child's use while she is in their home. Defendant did not seek visitation for more than a year after the child was born. Although his visits since then have been regular and satisfactory, he has never had the sole obligation of taking care of the child for any extended period. Defendant contends that plaintiff's mother, sister, and friends have done more to raise the child than plaintiff. However, defendant, who lives with his parents, also has a support group for his involvement with the child during visitation. Since September 1993, plaintiff has lived alone with the child for most of the year and, as the trial court notes in its thorough opinion, has matured considerably in her commitment to parenting. The trial court's finding

that there was an established custodial environment with plaintiff is affirmed.

Because there was an established custodial environment in this case, the trial court is prohibited from changing custody unless clear and convincing evidence demonstrates that a change in custody would be in the child's best interest. *Baker, supra* at 577; *Hayes, supra* at 387. The trial court's determination regarding best interest is made by weighing the "sum total" of twelve statutory factors. MCL 722.23; MSA 25.312(3). A court's ultimate finding regarding a particular factor is a factual finding that can be set aside if it is against the great weight of the evidence. A trial court's discretion in weighing the evidence is "not unlimited; rather, it must be supported by the weight of the evidence." *Fletcher, supra* at 881. Questions of law are reviewed by this Court for legal error. When a trial court "incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Id.*

In this case, as required by the Child Custody Act, the trial court made findings of fact regarding each of the following statutory factors contained in MCL 722.23; MSA 25.312(3).

"(a) The love, affection, and other emotional ties existing between the parties involved and the child." The trial court found that the child has a strong attachment to both parents and that both parents now "exhibit a strong degree of love and affection for the child." The trial court found that this factor does not weigh in either party's favor and we agree. The evidence does not "clearly preponderate" against the trial court's finding that this factor is neutral.

"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of

the child in his or her religion or creed, if any." As the trial court noted in its findings, neither party demonstrated significant parenting ability during the child's early life. Since shortly after high school graduation, however, plaintiff. has demonstrated a "new maturity and determination." Defendant has shown himself to be "very capable" in caring for the child during visitation. We are aware that defendant presented at the hearing a great deal of testimony purporting to show that defendant's child-rearing techniques were preferable to plaintiff's. We commend the trial court's recognition that the parties' parenting styles are not identical and that "it is anticipated that each one would, in their own way, bring to the child their concept of nurturing, guidance and love." Both parties share the Roman Catholic faith and, although both "practice their faith as they see fit," they agree that the child will be raised in their faith. The trial court's finding that the parties are equal with regard to this factor is not contrary to the great weight of the evidence.

"(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." The trial court found that the day-to-day costs of raising the child have been paid by the maternal grandmother. However, the trial court correctly found that the grandparents' contributions to expenses did not weigh in favor of either party. Although both parties work part-time, "these child-parents are in no position to adequately support their baby." The evidence supports the trial court's finding that the parties are equal with regard to this factor.

"(d) The length of time the child has lived in a

stable, satisfactory environment, and the desirability of maintaining continuity." The child has lived virtually all her life with plaintiff, most of the time in plaintiff's family home. As the trial court indicated in its opinion, defendant presented "derogatory comments relating to conditions that existed in the plaintiff's home prior to the summer of 1993." The trial court also found that the evidence showed that the conditions improved "with the maturity of the plaintiff," and that, in any event, the plaintiff is now living independently of her mother most of the time. The trial court's conclusion that this factor "carries little, if any, weight in favor of either party" is not contrary to the evidence.

"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes." In evaluating this factor, the trial court extensively considered each party's child-care plans and living arrangements. The trial court contrasted the child's care by a grandparent with child care by a university-approved provider, and contrasted plaintiff's university housing with defendant's childhood home with his parents. The trial court acknowledged that defendant's plans for his own future education, housing, or employment were "not completely clear," but concluded that, in the meantime, defendant's home, with his parents, was a "regular home and a regular program," and therefore preferable to plaintiff's university life style.

We find no support in the record for the trial court's speculation that there is "no way that a single parent, attending an academic program at an institution as prestigious as the University of Michigan, can do justice to their studies and to raising of an infant child." The evidence shows that the child has thrived in the university envi-

ronment. Defendant concedes that he has no complaint about the university day care, and the trial court recognized that the child has had a "meaningful experience" there. The trial court found plaintiff's day-care arrangements "appropriate," but concluded that defendant's plan to have his mother baby-sit was better for the child because she was a "blood relative" rather than a "stranger." Both parties will necessarily need the help of other people to care for their child as they continue their education and employment, and eventually their careers. In light of undisputed evidence that plaintiff's child-care arrangements are appropriate and working well, the evidence does not support the trial court's judgment that defendant's proposed, but untested, plans for the child's care would be better.

Moreover, an evaluation of each party's arrangements for the child's care while her parents work or go to school is not an appropriate consideration under this factor. We find the trial court committed clear legal error in considering the "acceptability" of the parties' homes and child-care arrangements under this factor, which is directed to the "permanence, as a family unit," of the individual parties. "This factor exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other." *Fletcher v Fletcher*, 200 Mich App 505, 517; 504 NW2d 684 (1993). Our Supreme Court affirmed this Court's opinion in *Fletcher* on this issue, 447 Mich 871, 884-885, stating: "We agree with the Court of Appeals. The facts relied upon and expressed by the judge relate to acceptability, rather than permanence, of the custodial unit."[1]

---

[1] We recognize that the trial court did not have the benefit of the Supreme Court's ruling on this issue in *Fletcher* at the time of trial.

Because the trial court's finding with regard to this factor was the basis for a change in the child's established custodial environment, the error is not harmless. Were we permitted to do so, we would reverse the trial court's decision and resolve the matter. However, review de novo of a custodial disposition is expressly prohibited by *Fletcher.* 447 Mich 889. Although it appears from the record that both of the child's "custodial units" are equally committed to permanence, we are no longer permitted to reach a speedy resolution. Particularly in a case such as this, in our view it ill serves the best interest of the child to remand for further proceedings. Nonetheless, *Fletcher* requires that we remand to the trial court for reevaluation of this factor. *Id.*

On remand, the trial court is to consider "up-to-date information" regarding this factor, as well as the fact that the child has "been living with the plaintiff during the appeal and any other changes in circumstances arising *since the trial court's original custody order." Id.,* emphasis added. The trial court is not, however, to entertain or revisit further "evidence" concerning events before the trial in May and June, 1994. See *id.*

"(f) The moral fitness of the parties involved." The trial court noted that both parties were apparently "sexually indiscriminate" during high school, and concluded that "neither one of these parties deserve any medals for their youthful activities." The evidence supports the trial court's finding that neither party benefits under this factor and that both parties have shown considerable growth during the past year.

"(g) The mental and physical health of the parties involved." The evidence does not clearly preponderate against the trial court's finding that this factor does not weigh in favor of either party. As

the trial court stated, "the parties appear to be youthfully healthy and at this time have a good mental outlook on their future."

"(h) The home, school, and community record of the child." Although there was testimony from the child's day-care provider that the child was well adjusted and clean, the trial court's conclusion that the child is too young to have a significant school and community record is affirmed.

"(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." The trial court found that, after seeing the child, "it was apparent that due to the infant's youth that no meaningful preference could be ascertained." The trial court's finding is not contrary to the evidence.

"(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." The record amply supports the trial court's conclusion that "pettiness, jealousy, etc., is still going to be on the scene and that the situation would require constant court monitoring." The trial court's finding that both parties have contributed to the "considerable discord," and are equal on this factor, is supported by the evidence.

"(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child." Although there was evidence of violence between the parties, the trial court found the issue of domestic violence "not pertinent here." While we agree that the trial court's choice of words was unfortunate, it is apparent from the record that the trial court carefully considered the issue and found the parties neutral with regard to this factor after reviewing the vastly conflicting evidence. The evidence presented in this case does not

clearly preponderate against the trial court's find-
ing.

"(l) Any other factor considered by the court to
be relevant to a particular child custody dispute."
The parties do not dispute the trial court's finding
that no other factors were relevant in this case.

As noted previously, we affirm the trial court's
finding that there was an established custodial
environment in plaintiff. We also affirm the trial
court's finding that the parties are equal, or the
proofs neutral, with regard to eleven of the twelve
statutory factors. We find no record support for
the trial court's finding that factor e favored
defendant, and find that it was clear legal error to
consider, under factor e, which party's arrange-
ment was preferable for the child's care while her
parent was working or at school. Because we are
no longer permitted, under *Fletcher,* to resolve
this matter here, we remand for reevaluation of
factor e. Only changes in circumstances since the
previous custody hearing are to be considered on
remand by the trial court. *Fletcher,* 447 Mich 889.

In Docket No. 182369, plaintiff argues that the
lower court erred in denying plaintiff's motion to
disqualify the trial judge in this matter.

Letters, or even complaints, to the Judicial Ten-
ure Commission alone do not require disqualifica-
tion of a trial judge. See *People v Bero,* 168 Mich
App 545, 552; 425 NW2d 138 (1988). A trial judge's
erroneous ruling, even when "vigorously and con-
sistently expressed," is not grounds for disqualifi-
cation. *Wayne Co Prosecutor v Parole Bd,* 210
Mich App 148, 155; 532 NW2d 899 (1995); *People v
Houston,* 179 Mich App 753, 756; 446 NW2d 543
(1989).

Nor do a judge's public statements necessarily
require disqualification. MCR 2.003(B). The Code of
Judicial Conduct, Canon 3, (A)(6), "does not pro-

hibit a judge from making public statements in the course of official duties or from explaining for public information the procedures of the court or the judge's holdings or actions."

As a general rule, a trial judge is not disqualified absent a showing of actual bias or prejudice. *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975); *Houston, supra; Band v Livonia Associates,* 176 Mich App 95, 118; 439 NW2d 285 (1989); *Czuprynski v Bay Circuit Judge,* 166 Mich App 118, 124; 420 NW2d 141 (1988). In *Houston,* at 757, this Court provided the following test for determining whether a trial judge should be disqualified:

> "The test is not [just] whether or not actual bias exists but also whether there was 'such a likelihood of bias *or an appearance of bias* that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the [affected party].' [*People v Lowenstein,* 118 Mich App 475, 482; 325 NW2d 462 (1982), lv den 414 Mich 947 (1982), quoting *Ungar v Sarafite,* 376 US 575, 588; 84 S Ct 841; 11 L Ed 2d 921 (1964)]." [Emphasis added.]

Even when a judge is personally convinced that he is impartial, disqualification is warranted "where there are circumstances of such a nature to cause doubt as to [the judge's] partiality, bias or prejudice." *Lowenstein, supra* at 482.

In this case, the media frenzy generated by the trial court's decision reached national proportions. Numerous newspaper and magazine articles, as well as radio and television references, appeared throughout Michigan and elsewhere. We are concerned that some of the trial judge's reported comments *appear* inconsistent with his expressed

findings of fact. Because we have found that the record supports those factual findings, we conclude that the nature and scope of the media exposure create an appearance of bias in this case.

In our view, it would be unreasonable to expect the trial judge to be able to put previously expressed views out of his mind without substantial difficulty. *United States v Sears, Roebuck & Co, Inc,* 785 F2d 777 (CA 9, 1986). We find that the advancement of the interests of preserving the appearance of justice and fairness outweighs other considerations here. Accordingly, we reverse the trial court's decision to deny plaintiff's motion to disqualify and order this case to be heard by a different judge on remand.

Plaintiff's issues concerning the chief judge's review of this matter, and the trial court's ability to hear future proceedings, are not preserved for review because they were not raised in the application for leave to appeal and supporting brief. MCR 7.205(D)(4). Defendant's claim on cross appeal that plaintiff should have been ordered to pay child support is moot at this time in light of our disposition.

In Docket No. 182369, the denial of plaintiff's motion to disqualify the trial judge is reversed. In Docket No. 177431, we affirm all the trial court's findings with the exception of its findings regarding factor e. Because the trial court's finding with regard to that factor was "pivotal," the trial court's change of custody is reversed. This matter is remanded to a different judge for reevaluation of factor e and reconsideration whether clear and convincing evidence dictates a change in custody. In order to expedite a speedy and final resolution, to the extent that we are able under *Fletcher,* we retain jurisdiction.