# STATE OF MICHIGAN

# COURT OF APPEALS

---

CAROL ANN MARSHO CAVANAUGH,

      Plaintiff-Appellee,

v

TIMOTHY ALLAN CAVANAUGH,

      Defendant-Appellant.

UNPUBLISHED
September 20, 2018

No. 341605
Livingston Circuit Court
LC No. 14-048751-DM

---

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant-father appeals the trial court's order changing custody by switching the parties' respective parenting times. The order gave primary physical custody to plaintiff-mother and granted defendant parenting time every other weekend and one evening per week. Prior to the order, the arrangement was exactly the opposite. Defendant argues that the trial court did not properly follow the custody-change framework defined in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003) and erred in its best-interests findings. For the reasons set forth below, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The parties were married in November 1987 and divorced in July 2015. At the time of the divorce, they had two minor children, a daughter, CC, and a son, TC, who were 16 and 11 years old respectively at the time judgment was entered. The judgment of divorce defined an unusual custody arrangement.[1] Plaintiff was awarded sole physical custody of CC and defendant was awarded sole physical custody of TC. The parties received joint legal custody of the children. Plaintiff was given parenting time with TC on alternating weekends, one mid-week visit, and two nonconsecutive weeks during the summer. Notably, the trial court's award of custody and parenting time was based largely in part on the recommendations of Dr. Charlene Kushler, the parties' therapist. Kushler testified that each parent was "aligned" with one of the children: defendant with TC and plaintiff with CC. She stated that both parents were openly

---

[1] The initial custody order contained in the judgment of divorce was before a different judge.

disparaging each other in front of the children and that they did not communicate with one another effectively. According to Kushler, it was best to allow each child to live primarily with their aligned parent and to continue therapy in hopes of eventually being able to move to shared custody.

The parties' custody and parenting time arrangement continued until October 2017, when plaintiff filed a multi-issue motion requesting, among other things, a change in custody or parenting time. In her motion, plaintiff alleged that defendant repeatedly engaged in conduct that alienated her from TC, disrupted her parenting time schedule, and that defendant's conduct caused stress and emotional distress to the minor child.[2]

At the motion hearing, plaintiff testified that defendant's continuously interfered with her relationship with TC and had blocked communications between them. She testified that there had been approximately 10 occasions since the divorce when defendant delayed or prevented her from exercising her parenting time and that he had on at least two occasions interfered with her exercise of longer periods of parenting time during holidays. She testified that defendant refused to respond to her communications via any means other than e-mail, which he answered sporadically, and that he had engaged in disrespectful actions such as posting "no trespassing" signs in his yard intended to prevent her from using the driveway during parenting-time exchanges. She also testified that defendant, who had a new job, had to travel for several days at a time, several times per year. Finally, she testified that defendant had interfered with TC receiving needed orthodontic treatment by refusing to allow TC to be treated by the orthodontist of her choice.

Defendant testified that he has accommodated plaintiff's parenting-time requests and has never prevented TC from contacting his mother. He did not dispute that he had posted no trespassing signs. He denied that he interfered with plaintiff's parenting time except for one episode during the summer when he signed TC up for Boy Scout camp during plaintiff's parenting time. He noted that the court had ordered that plaintiff have the entire Christmas vacation to make up for that. He stated that TC wants to spend more time with his mother and that he supported that. As for his traveling, defendant testified that since he began his new job, he had traveled out of the country once and three times inside the country and the trips were each "less than 3 to 4 days." He stated that plaintiff would care for TC during his travels, but admitted that on several occasions he had only provided her with a day or two of notice even though he was aware of the upcoming travel schedule for some time. He agreed that TC required treatment by an orthodontist but expressed his displeasure with other work performed by the orthodontist chosen by plaintiff. Defendant said that he had taken TC to a different orthodontist but that plaintiff cancelled the appointments. On questioning by the court, defendant agreed to be responsible for all orthodontic fees since the professional he selected charged considerably more than the one selected by plaintiff.

---

[2] By the time the motion was brought, CC had turned 18 and was attending college. The custody issue in this case relates only to TC.

The trial court found plaintiff more credible than defendant. In granting plaintiff's motion, the trial court initially treated the issue as a change in parenting time. The court noted that there was a custodial environment with both parties and held that proper cause under *Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010) existed to grant plaintiff's request. However, the trial court did not review the parenting time best interest factors set forth in MCL 722.27a, and the proceeding then shifted gears to a lengthy discussion of spousal support and financial documentation that defendant had delayed in providing.

The discussion eventually returned to custody. Defendant's attorney advised the court that a complete switch of parenting time such that defendant became the "weekend parent" amounted to a change in custody. The trial court agreed and noted that in order to change custody, it would have to find by clear and convincing evidence that it was in TC's best interests to do so. The trial court then moved immediately to a review of the best-interest factors found in MCL 722.23. The court found that most of the best-interests factors were neutral, i.e., neither party was favored. However, the court found that the other four factors favored plaintiff and concluded by clear and convincing evidence that it was in TC's best interests for his mother, rather than his father, to have primary physical custody.

## II. ANALYSIS

A trial court's order resolving a child custody dispute "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). A trial court's factual findings are against the great weight of the evidence when "the evidence clearly preponderates in the opposite direction." *Ireland v Smith*, 214 Mich App 235, 242; 542 NW2d 344 (1995).

The Child Custody Act of 1970, MCL 722.21 *et seq.*, authorizes a trial court to issue custody and parenting time orders that are in the child's best interests. *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017). MCL 722.27(1)(c) allows the trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances . . . ." In *Vodvarka*, 259 Mich App at 510-514, we defined the phrases "proper cause" and "change of circumstances." But, in *Shade*, 291 Mich App at 28, we determined that "[t]he *Vodvarka* definitions" are "far less applicable with respect to parenting time determinations." If a parenting time modification constitutes a change in custody, then the trial court must follow the *Vodvarka* definitions. *Kubicki v Sharpe*, 306 Mich App 525, 540 n 8; 858 NW2d 57 (2014). Further, "[w]hen a modification in parenting time would amount to a change of the established custodial environment, it should not be granted unless the circuit court is persuaded by clear and convincing evidence that the change would be in the best interest of the child." *Pierron v Pierron*, 282 Mich App 222, 249; 765 NW2d 345 (2009) (quotation marks and citation omitted).

We agree with defendant that the trial court's failure to make a determination whether the *Vodvarka* threshold had been met was clear legal error. The trial court initially determined that the *Shade* standard was applicable because it would be granting a change in parenting time, not custody. The trial court later acknowledged that the parenting time modification would disrupt

the child's established custodial environment with defendant.[3] However, the trial court did not determine whether proper cause or change of circumstances existed under the *Vodvarka* definitions.

Plaintiff argues that we may overlook the trial court's failure to address the *Vodvarka* threshold as a technical oversight because in her view the court made findings that were sufficient to satisfy the threshold. Given the record, we cannot say that the trial court committed a harmless error by applying the *Shade* standard. Although we decline to decide this issue, it is unclear whether there was sufficient evidence to uphold the trial court's finding of proper cause or change of circumstances under the *Vodvarka* definitions. The poor relationship between the parties is not new. The key is whether defendant's actions, specifically his interference with plaintiff's parenting time, are having a significant effect on the child's well-being. *Vodvarka*, 259 Mich App at 512, 514. We acknowledge that there were other matters ostensibly supporting the court's finding, e.g., defendant's new traveling requirements for work and TC's orthodontic care, but we are also cognizant that the Legislature intended that custody changes would only be granted in compelling cases. *Id*. at 509. For those reasons, we remand to the trial court so that it may consider whether plaintiff has shown proper cause or change of circumstances under the *Vodvarka* framework.

In light of our conclusion that the trial court erred in considering the custody change, we need not consider whether the trial court's best-interests findings were against the great weight of the evidence as claimed by defendant. If the trial court finds on remand that a reevaluation of physical custody is warranted, then it should proceed to consider the best-interests factors to determine whether there is clear and convincing evidence that such a change would be in TC's best interests.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[3] On appeal, plaintiff argues that the parenting time modification would not have modified TC's established custodial environment with defendant. But a substantial reduction in parenting time can amount to a change in an established custodial environment. *Lieberman*, 319 Mich App at 90. In this case, the trial court's finding that defendant's loss of primary physical custody altered his custodial environment with TC was not against the great weight of the evidence.