*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLEMENTINE JOSEFF,

      Plaintiff-Appellant,

v

ARNOLD F. JOSEFF,

      Defendant-Appellee.

UNPUBLISHED
September 12, 2019

Nos. 344423; 345209
Oakland Circuit Court
LC No. 2017-851574-DO

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

These consolidated appeals arise out of postjudgment proceedings in the parties' divorce action, which dissolved their marriage of more than 50 years. In Docket No. 344423, plaintiff, Clementine Joseff, appeals as of right the trial court's order holding her in contempt and awarding defendant, Arnold F. Joseff, sanctions including costs, attorney fees, and moving expenses. In Docket No. 345209, plaintiff appeals as of right the trial court's order that, in pertinent part, largely denied plaintiff's postjudgment motion concerning certain "status quo" disputes and her request for attorney fees. We would have preferred a better record regarding the trial court's contempt order, but nevertheless, we affirm.

## I. FACTUAL BACKGROUND

Shortly after plaintiff initiated this action, the trial court entered the first of many mutual restraining orders concerning the parties' finances, which were essentially intended to maintain the parties' fiscal status quo. Plaintiff was later awarded spousal support, and defendant was ordered to continue paying certain expenses related to the marital home, in which plaintiff continued to reside. Shortly before the parties' judgment of divorce was entered, the trial court entered an "interim injunctive order" that, in pertinent part, forbade either party from engaging in a long list of conduct that might affect any property identified in the judgment of divorce.

The parties' consent judgment of divorce was subsequently entered on March 21, 2018. In pertinent part, it provided:

**INTERIM STATUS QUO**

-1-

3. *Through December 31, 2017*, the interim status quo Order previously filed in this case shall remain in full force and effect as to all covered bills *accrued through that date*. This shall include reasonable and necessary repairs to the marital home. Thereafter all of Defendant's responsibilities and obligations as set forth under said order shall terminate . . . Post Judgment briefs regarding status quo disputes will be filed with the Court . . . This includes payment of attorney fees claimed to be status quo expenses of Defendant.

\* \* \*

## MUTUAL RELEASE OF CLAIMS

11. Except as otherwise specifically provided in this Judgment, the parties release one another, assigns and successors in interest from all claims that either may have against the other, known or unknown, arising at any time through the date of entry of Judgment, whether in tort, contract or otherwise, except claims arising out of fraud, nondisclosure of assets, the terms of the DCT Deal or obligations created by or specifically preserved in this Judgment. The parties give this release freely and voluntarily in consideration for the awards, benefits and concessions reflected in this judgment.

\* \* \*

## ATTORNEY FEES

24. Except as set forth in paragraph 27 below,[1] each party shall pay their own respective attorney fees and costs. The attorneys and financial experts of the parties are granted liens on their respective client's property interests to secure payment of fees and expenses[.]

25. No later than February 15, 2018 the Defendant shall pay to Jorin Rubin the sum of $15,000 as attorney fees on behalf of the Plaintiff. He shall have no further responsibility for fees or costs paid on behalf of the Plaintiff.

## FINAL ORDER

26. This Judgment constitutes a full and final order resolving all pending claims between the parties.

Defendant was also ordered to pay $5,000 a month to plaintiff in spousal support, pending the sale of his interest in DCT, which was one of his businesses, and its subsidiaries. Following completion of that sale, defendant was to pay plaintiff $3.3 million, after which his obligation to

---

[1] The referenced ¶ 27 regards the parties' obligations to modify certain estate planning documents in conformity with the terms of the consent judgment.

pay further spousal support would "terminate immediately[.]"  Subject to existing mortgages, plaintiff was awarded the marital home in Bloomfield Township and two condominiums in Boca Raton, Florida, along with all contents of those properties not specifically awarded to defendant. She was also awarded an SUV, "[h]er jewelry," and several bank accounts.  The parties would equally split several other financial accounts and an unspecified number of shares of "MetLife stock."  Defendant was specifically awarded certain enumerated property located at the marital residence, including copies of photographs of the parties' children, a desk, chair, desk pad set, and a bookshelf.  Those items were to be "made available to him by Plaintiff within 21 days of entry of Judgment."

On April 11, 2018, the parties filed competing motions to enforce the divorce judgment. In relevant part, defendant alleged that his attorney had repeatedly requested dates for retrieving the enumerated items of personal property ("the subject personalty"), but those requests had "been consistently ignored."  The trial court ordered plaintiff to permit defendant to remove such items from the marital home on May 5, 2018, using professional movers to do so.  Four days later, defendant filed a second motion, alleging that plaintiff's attorney had refused to give defendant access on the basis of a fictitious pretext.

At the ensuing motion hearing, the trial court agreed with defendant, stating, "I don't think I should have to say it three times.  All right . . . [H]e should've been allowed in the house. I was very clear in my order before."  Accordingly, the court entered an order on May 16, 2018, providing that defendant and his movers, accompanied by local police, would be permitted to enter the marital home to remove the subject personalty on May 22, 2018.  The court further ordered that neither party would "have any third party present other than the police" and defendant's movers.  The court ordered plaintiff to provide defendant, "through counsel, all family photographs for copying, or in the alternative, high quality digital prints of all said photographs."  On May 23, 2018, defendant filed a show-cause motion, in which he argued that when he was finally allowed into the marital home, the desk, chair, and desk pad set were missing and had been replaced by cheap substitutes.  Defendant further stated that he tried to go upstairs to look for the items, "all of the upstairs bedroom doors were locked."  Defendant requested an order holding plaintiff in contempt, appointment of a receiver, attorney fees, sanctions, and moving costs and other fees.

At the outset of the ensuing hearing, the trial court expressed its frustration with plaintiff's continued failure to comply with the court's orders, describing the situation as "beyond ridiculous."  Plaintiff nevertheless testified that the inlay desk and associated chair had never been present in the marital home, and she denied that she had moved a desk out of the first-floor den.  However, plaintiff admitted that the computer desk and chair that defendant had found in the first-floor den had previously been upstairs.  Plaintiff also admitted that *some* desk, which "belonged to" defendant, might have been in the basement of the marital home, again behind a locked door.[2]  When asked whether there remained any family photographs in the

---

[2] Upon questioning, defendant indicated that the door to the basement had also been locked during his visit to the home.

marital home that had not been provided to defendant, plaintiff replied, "I wouldn't know. They're not there now, are they?" The court then stated, "that's enough from her," but it permitted plaintiff's counsel to provide a further factual and legal presentation. There was no request by either party's counsel to ask plaintiff further questions. The trial court subsequently found plaintiff in contempt "for violation of [its] May 16ᵗʰ, 2018, order." It therefore granted defendant's request for attorney fees, granted sanctions in "an unknown amount at this time until I have an inventory with prices from the defendant," awarded moving costs to defendant, appointed "a receiver to investigate and locate the items," and ordered that defendant was to have full access to every room in the home without plaintiff present. It concluded that "we're not doing this anymore." When plaintiff interrupted the trial court's ruling, asking whether she could "say something," the court replied:

> No. You said enough. You were actually very clear in your words. You don't care. You don't care and . . . you're making this an impossible situation which should have been a very manageable situation.

At a subsequent hearing—which plaintiff did not attend—the receiver and the attorneys for both parties expressed concern regarding plaintiff's competency. The receiver filed an extensive report, which in relevant part expressed "grave concerns" regarding plaintiff's competence and cognitive capabilities. The receiver found her responses to inquiries incredible, inconsistent, and nonsensical. However, the receiver was "inclin[ed] to attribute her actions and statements to be based on mental deficits rather than intentional efforts to be obstructive." The receiver found it "clear that [plaintiff] needs help making decisions." Nevertheless, the receiver concluded that if plaintiff "were 'let off the hook' in terms of violating court orders and misleading the Court due to mental deficiencies," then she needed to have a guardian and/or conservator appointed. Alternatively, if the Court found her not to be in need of a guardian or conservator, "then she should be treated as a competent adult and held fully accountable for her actions." The parties' attorneys represented to the trial court that the parties' adult children were planning to assume control over plaintiff's finances. The trial court concluded that in light of plaintiff's dubious competency, it would, in the interest of fairness, reserve further rulings regarding "the contempt issues" and associated attorney fees, pending further inquiry into plaintiff's mental state.

Following entry of the divorce judgment, plaintiff filed supplemental briefs concerning status quo and attorney fee violations, and defendant filed objections. After considering the parties' briefs, the trial court issued an opinion and order, primarily denying plaintiff's requested relief. With regard to the relief it denied plaintiff, the trial court repeatedly reasoned that "[f]rom the exhibits and arguments presented, the court [could not] discern wife's reasons for seeking the amount requested." Plaintiff filed a motion for reconsideration, which the trial court also denied.

## II. ANALYSIS

On appeal, plaintiff asserts numerous claims of error. We address each in turn.

### A. DOCKET NO. 344423

#### 1. CONTEMPT PROCEEDINGS

-4-

Plaintiff argues that the trial court denied her due process, committed legal error, and abused its discretion by failing to follow the required procedure and make the requisite findings to hold her in contempt. We disagree.[3]

"We review a trial court's issuance of a contempt order for an abuse of discretion and the factual findings supporting the order for clear error." *In re Moroun*, 295 Mich App 312, 335; 814 NW2d 319 (2012). An abuse of discretion occurs when the trial's court's decision leads to an outcome that falls outside the range of principled outcomes. *Id*. at 335-336. "To the extent that this Court must examine questions of law related to the trial court's contempt decision, our review is de novo." *Id*. at 336.

As a threshold observation, we note that plaintiff's reliance on MCL 600.1711 is misplaced. Although our Legislature has enacted a chapter in the Revised Judicature Act that *purports* to govern the proper exercise of the contempt power, see MCL 600.1701 *et seq*., under separation-of-powers principles embedded in our 1963 Constitution, the Legislature lacks any authority to place constraints on the juridical contempt power:

> Michigan courts have, as an inherent power, the power at common law to punish all contempts of court. This contempt power inheres in the judicial power vested in this Court, the Court of Appeals, and the circuit and probate courts by Const 1963, art 6, § 1. Therefore, statutory provisions . . . are merely declaratory of the courts' contempt powers and do not restrict or abridge those powers. [*In re Contempt of Dougherty*, 429 Mich 81, 92 n 14; 413 NW2d 392 (1987) (citations omitted; emphasis added).]

Thus, the trial court could not have committed error requiring reversal by failing to comport with MCL 600.1711.

In any event, plaintiff's instant claims of error are unpersuasive under governing case law. "When a court seeks to compel a contemnor to comply with its order requiring or forbidding some particular act, the court may use the *coercive* sanctions permitted by civil contempt[.]" *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 711; 624 NW2d 443 (2000) (*Auto Club*). However, a trial court may exercise its civil contempt powers only if the contumacious conduct "persist[s] at the time of the contempt hearing[.]" *Id*. at 712. Criminal contempt, on the other hand, does not serve coercive ends; it "serves a very different purpose . . . in that it punishes the contemnor for past conduct that affronts the court's dignity." *Id*. at 713. Because an order of criminal contempt does not attempt "to force the contemnor to comply with

---

[3] Plaintiff raised no due-process arguments below, nor did she contend that she had been provided inadequate notice concerning whether the proceedings against her were civil or criminal in nature. Thus, those issues are unpreserved, see *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005), and we decline to review them, see *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (noting that, as a general rule, "failure to timely raise an issue waives review of that issue on appeal").

an order," "it is impossible to purge this sort of contempt by acting in any particular manner." *Id.*

As this Court observed in *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009), "[d]ifferentiating between civil contempt and criminal contempt is not easy because both forms of contempt might result in the contemnor's being imprisoned for willfully failing to comply with an order of the court." Indeed, "all contempt proceedings are referred to as 'quasi-criminal' or 'criminal in nature.' " *Id.* (quotation marks and citations omitted). Nevertheless:

> The distinction between civil and criminal contempt is important because a criminal contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial. A party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt. Further, a party accused of criminal contempt must be informed of the nature of the charge against him or her and . . . given adequate opportunity to prepare a defense and to secure the assistance of counsel. In contrast, in a civil contempt proceeding, the accused must be accorded rudimentary due process, i.e., notice and an opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated. [Quotation marks and citations omitted.]

On appeal, plaintiff argues that the trial court's award of sanctions against her in the June 7, 2018, contempt order must be viewed as a sanction for criminal contempt because it was intended to compensate defendant for expenses related to plaintiff's *past* conduct. We disagree. "[T]here are *three* sanctions which may be available to a court to remedy or redress contemptuous behavior: (1) criminal punishment to vindicate the court's authority; (2) coercion, to force compliance with the order; and (3) compensatory relief to the complainant." *Dougherty*, 429 Mich at 98 (emphasis added). The third of those available sanctions—an "order compensating the complainant for actual losses"—is a civil remedy, not a criminal sanction. *Id.* at 100. Thus, plaintiff is not correct that these proceedings were necessarily criminal in nature merely because they addressed her past conduct.

We do find concerning plaintiff's argument that there was an insufficient factual basis to support the trial court's ruling holding her in contempt. In particular, the trial court failed to articulate *how* plaintiff had violated its May 16, 2018, order. Nevertheless, the evidence overwhelmingly shows that the trial court could have reached that conclusion for a number of reasons. In support of defendant's show-cause motion, he submitted an affidavit indicating that plaintiff had violated the trial court's previous orders in several ways. On the basis of defendant's affidavit, plaintiff's testimony at the June 6, 2017, hearing, which provided the trial court an opportunity to evaluate plaintiff's credibility, and the arguments of counsel at the same hearing, there was sufficient evidence for the trial court to decide whether plaintiff had violated the court's orders. Furthermore, "[w]here a contempt action is civil, there is no need to find that defendant willfully disobeyed an order of the court; it is enough that defendant simply violated his duty to obey the court." *Cassidy v Cassidy*, 318 Mich App 463, 505; 899 NW2d 65 (2017). Plaintiff clearly did violate her duty to obey the court, and it is readily apparent from the hearing transcript that plaintiff was disinclined to answer "yes or no" questions in lieu of flippancy.

Under the particular circumstances of this case, we therefore uphold the trial court's ruling despite its failure to make a proper record. Consequently, the trial court was justified in issuing a civil contempt remedy against her.[4]

We also reject plaintiff's claim that the trial court somehow erred by reserving its ruling concerning any additional contempt sanctions that would be awarded. Any harm suffered by plaintiff is, at this time, speculative. In any event, plaintiff has presented no legal theory supporting her theory that it was improper for the trial court to reserve its ruling on sanctions for later determination. Nor are we able to conceive of any rationale that would support plaintiff's instant claim of error. To the contrary, the trial court expressed a commendable concern for fairness to plaintiff, and it is always proper for the trial court to employ restraint and careful consideration in the exercise of its contempt powers. See *In re Contempt of Dudzinski*, 257 Mich App 96, 109; 667 NW2d 68 (2003) ("The contempt power is awesome and must be used with the utmost restraint. The courts have the responsibility to apply the contempt power judiciously") (quotation marks and citations omitted).

## 2. CONTEMPT SANCTIONS

Plaintiff next argues that the trial court abused its discretion and committed "clear legal error" by awarding defendant contempt sanctions of $3,000 in attorney fees without first conducting an evidentiary hearing concerning the reasonableness of that fee award. Because plaintiff raised no challenge below to the reasonableness of the amount of the sanctions awarded, she is unentitled to relief here. See *Walters*, 481 Mich at 388 ("Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention."); *Persichini v William Beaumont Hosp*, 238 Mich App 626, 645; 607 NW2d 100 (1999) ("Because plaintiff never argued . . . that the amount of the requested sanctions was excessive, the [trial court's] failure to hold an evidentiary hearing to address the issue was not an abuse of discretion."); *Jansen v Jansen*, 205 Mich App 169, 173; 517 NW2d 275 (1994) ("Objection to the reasonableness of the amount of an award of attorney fees may not be raised for the first time on appeal.").

## 3. JUDICIAL REASSIGNMENT

Plaintiff also argues that we should order this matter assigned to a different trial judge on remand pursuant to MCR 7.216(A)(7). We conclude that reassignment is unwarranted.

As this Court observed in *In re Bibi Guardianship*, 315 Mich App 323, 337; 890 NW2d 387 (2016):

The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides

---

[4] However, we suggest to the trial court that the better practice would be to place its reasoning on the record, to ensure that in a future case, it and the parties are not burdened by the need to do so on a remand.

over the case. In deciding whether to remand to a different judge, this Court considers whether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication. [Quotation marks and citations omitted.]

"The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require . . . reassignment." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). This is true even if the erroneous rulings were "vigorously and consistently expressed" by the trial court. *Ireland v Smith*, 214 Mich App 235, 249; 542 NW2d 344 (1995), aff'd as mod on other grounds 451 Mich 457 (1996), quoting *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995) (quotation marks and citations omitted). Indeed, "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation marks and citations omitted).

Plaintiff has failed to rebut the strong presumption of judicial impartiality here. It is clear that the trial court was frustrated with plaintiff's continued obstructionism and her disobedience of the court's orders. However, the trial court's remarks did not display such deep-seated favoritism toward defendant or antagonism toward plaintiff as to render fair judgment impossible. To the contrary, when the trial court was informed that plaintiff might be suffering from diminished capacity, the court was quick to reconsider the matter, holding that it would reserve any further orders concerning "the contempt issues" "and fees, pending further inquiry into plaintiff's mental state. Reassignment on remand is not justified here.

## B. DOCKET NO. 345209

### 1. "EQUALIZATION" OF ATTORNEY FEES

Plaintiff argues that the trial court erred by denying her request to "equalize" fees paid by the parties to their divorce attorneys in this action. We disagree.

Plaintiff's argument concerning this issue is poorly briefed and difficult to follow. Aside from general equitable principles, plaintiff cites no authority in support of her contention that the trial court erred by failing to "equalize" the amount that the parties paid their divorce attorneys, and we are aware of no authority in support of that proposition. Given the evidence tending to show that plaintiff's own misconduct drove a considerable portion of the parties' costs, we find plaintiff's reliance on equitable principles to be questionable. Plaintiff also cites no *specific* portion of any of the several mutual restraining and status quo orders that were entered below as support for her instant claim of error.

In any event, plaintiff's reliance on equitable principles also fails because it is contrary to the express language of the divorce judgment. "Equitable issues" in a divorce action are reviewed de novo, *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013), as are questions concerning the proper construction of a consent judgment of divorce, *Rose v Rose*, 289

Mich App 45, 49; 795 NW2d 611 (2010). "Settlement contracts in divorce proceedings, like other contracts between consenting adults, are enforced according to the terms to which the parties agreed." *In re Lett Estate*, 314 Mich App 587, 600; 887 NW2d 807 (2016). Put differently, "a consent judgment of divorce is a contract that must be interpreted according to the plain and ordinary meaning of its terms," and the "court may not rewrite clear and unambiguous language under the guise of interpretation." *Id*. (quotation marks and citation omitted).

In relevant part, ¶ 24 of the parties' consent judgment of divorce provides, "each party shall pay their own respective attorney fees and costs," and ¶ 25 provides that after making a final $15,000 payment of attorney fees on plaintiff's behalf, defendant "shall have no further responsibility for fees or costs paid on behalf of the Plaintiff." This language is unambiguous, and plaintiff has presented no theory by which she might avoid its enforcement. Plaintiff consented to a settlement under which defendant would pay an additional $15,000 toward her attorney fees, after which he would have "no further responsibility" for such fees. The trial court was neither required nor permitted to rewrite the parties' consent judgment to arrive at a more "equitable" result.[5] Thus, the trial court properly rejected plaintiff's postjudgment request to "equalize" the parties' attorney fees.

Nor are we persuaded that the trial court erred by denying plaintiff's request to be reimbursed for defendant's payment, from marital assets, of costs and attorney fees related to the business litigation regarding DCT. The trial court found that plaintiff had failed to demonstrate that this expenditure of marital assets was improper, instead holding that defendant had paid such marital assets to *preserve* the marital estate, including his sizable financial stake in DCT and its subsidiaries. On this record, we perceive no basis for disturbing the trial court's factual findings in that regard. Indeed, had defendant failed to take the steps necessary to duly defend the DCT litigation, including the retention of legal counsel, he might well have been accused of violating the status quo orders and the interim injunctive order by permitting his interest in DCT—a marital asset discussed at length in the consent judgment—to be impaired by the entry of a judgment against him. To the extent equity has any bearing at all, it will not countenance wastefully trapping a party within a "Catch-22."

## 2. EVIDENTIARY HEARING

With regard to plaintiff's postjudgment "supplemental brief" concerning certain status quo disputes, she argues that the trial court erred by ruling on what the court acknowledged to be

---

[5] It is immaterial that ¶ 3 of the consent judgment stated that postjudgment briefs "regarding status quo disputes w[ould] be filed with the Court," "includ[ing] payment of attorney fees claimed to be status quo expenses of Defendant." Plaintiff was, in fact, permitted to *file* postjudgment briefs on that subject. But nothing in ¶ 3 indicated that it was intended to act as an exception to ¶ 25 or to change that later paragraph's plain meaning. In other words, the fact that the parties agreed that they would be permitted to file postjudgment briefs regarding *then existing* "status quo" attorney fee disputes had no impact on their agreement, in ¶ 25, that defendant would have no "further" responsibility for plaintiff's attorney fees after he paid an additional $15,000.

an inadequate factual record, rather than sua sponte scheduling an evidentiary hearing. We disagree. See *Walters*, 481 Mich at 388 ("Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."). If plaintiff required an evidentiary hearing to substantiate the factual assertions in her brief, she should have requested one. She did not. Instead, she submitted exhibits as evidentiary support, and in her prayer for relief she expressly asked the trial court to rule on the basis of what had been presented. Therefore, she cannot now assign the lack of an evidentiary hearing as error requiring reversal. See *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991) ("Error requiring reversal must be that of the trial court, and not error to which the appellant contributed by plan or negligence.").

## 3. MOTION FOR RECONSIDERATION

Finally, plaintiff argues that the trial court "declined to properly exercise it's [sic] discretion to reconsider and reverse its" prior decisions pursuant to MCR 2.119(F)(3). We disagree.

"We review for an abuse of discretion a trial court's decision on a motion for reconsideration. A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Luckow v Luckow*, 291 Mich App 417, 423; 805 NW2d 453 (2011) (citation omitted). A trial court cannot abuse its discretion by denying a motion for reconsideration "resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order," *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008), and such was the case here. Nor does plaintiff specifically point to any palpable error by which the court and the parties were misled. Thus, we reject her instant claim of error.

Affirmed. Defendant, being the prevailing party in both docket numbers, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens