*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTI ANN PALIK,

        Plaintiff-Appellee,

v

JEFFREY JAMES PALIK,

        Defendant-Appellant.

UNPUBLISHED
September 15, 2022

No. 361100
Ontonagon Circuit Court
Family Division
LC No. 2021-000028-DM

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this custody case, defendant appeals as of right from the judgment of divorce in which plaintiff was awarded primary physical custody of the parties' three children, AKP, JLP, and JJP. Defendant challenges (1) the trial court's finding that there was an established custodial environment only with plaintiff, (2) the trial court's best-interest findings, and (3) the trial court's decision to impute income to defendant. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff abruptly left defendant after approximately 10 years of marriage and took the parties' children from the couple's home in Ontonagon, Michigan, to live with her new boyfriend in Grand Marais, Minnesota. She initially lived with the children in an RV on property owned by her boyfriend's father, but that arrangement lasted only a short time until she moved into a three-bedroom apartment with her new boyfriend and the three children. Defendant continued to reside in the marital home in Ontonagon. At the time of the separation, defendant was employed at a job in which he would work in Wisconsin for eight days then have six days off. The initial parenting schedule accommodated defendant's work schedule, having the children reside with plaintiff when defendant was working and with defendant when he was off. Prior to and immediately after the separation, the children were homeschooled by plaintiff.

In the months following the separation, certain developments led defendant to file a motion for primary physical custody. First, defendant discovered that the children had significant educational deficiencies. Second, defendant obtained a new job that allowed him to stay in

Ontonagon full-time. This job came with a significant pay-cut, however. Defendant used to earn approximately $70,000 a year, but his pay at the new job was about half of that. In light of these developments, defendant's motion requested that he be granted primary physical custody, that the children be sent to public school in Ontonagon, and that defendant's child support be decreased to a level commensurate with his decreased income.

Ultimately, the court made plaintiff the children's primary custodian, granted defendant parenting time two weekends each month, and ordered that the children attend school in Grand Marais, Minnesota. Additionally, the court found that defendant's decision to leave his job and accept such a large reduction in income was unreasonable, so it imputed income to him at a level commensurate with his prior employment. This appeal followed.

## II. CUSTODY

### A. STANDARDS OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This statute distinguishes among three types of rulings "and assigns standards of review to each." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011) (quotation marks and citation omitted). The first type is factual findings, which "are reviewed under the 'great weight of the evidence' standard." *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). The second type is questions of law, which are reviewed for clear legal error. *Id*. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). The third type is discretionary rulings, which are reviewed for a palpable abuse of discretion. *Dailey*, 291 Mich App at 664. "An abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Id*. at 664-665 (quotation marks, citations, and alteration omitted).

Whether there is an established custodial environment is a question of fact reviewed under the great-weight-of-the-evidence standard, *Pennington*, 329 Mich App at 570, while to whom custody should be awarded is a discretionary ruling reviewed for a palpable abuse of discretion, *Dailey*, 291 Mich App at 664.

### B. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that the trial court erred by finding that there was an established custodial environment only with plaintiff. We disagree.

Child custody in Michigan is governed by the Child Custody Act, MCL 722.21 *et seq*. "When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment."

*Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). Section 7 of the Child Custody Act explains what is meant by "established custodial environment":

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

"[A] custodial environment can be established in more than one home." *Ritterhaus v Ritterhaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007).

The trial court found that the children did not have an established custodial environment with defendant because, before the separation, he did not have a large role in the children's lives, and his enlarged role after the separation had not existed long enough to establish a custodial environment. These findings were not against the great weight of the evidence.

Both parties seemed to agree in the trial court that, while the parties were living together, plaintiff was the children's primary caretaker while defendant worked—there was no dispute that plaintiff cared for the children during the eight days that defendant was away for work. Their testimonies conflicted, however, about who cared for the children when defendant was home. Defendant testified about how he would help care for the children while he was home. Plaintiff, on the other hand, testified that defendant did not have any significant role in the children's lives when he was home—according to plaintiff, defendant, when home, would focus on onerous work around the family's farm while plaintiff and the children did less-demanding chores together. Plaintiff also testified that defendant did not have any role in the children's education while the parties were together, which was seemingly confirmed by defendant discovering the children's educational deficiencies only after the parties separated. The trial court credited plaintiff's testimony that, before the parties' separation, defendant spent minimal time helping to care for the children, so its finding that the children would not have looked to defendant for guidance, discipline, the necessities of life, and parental comfort during that time was not against the great weight of the evidence.

The evidence at trial showed that, after the parties separated, defendant indisputably took on a larger role in the children's lives. Immediately following the separation, defendant cared for the children by himself for six-day stretches. This arrangement only lasted a few months, however—once the children were enrolled in school, defendant had the children by himself only two weekends a month. The trial court seemed to implicitly find that, during the time that defendant cared for the children by himself, the children looked to defendant for guidance, discipline, the necessities of life, and parental comfort. The court nevertheless found that there was no established custodial environment with defendant because the circumstances had not existed "over an appreciable time." MCL 722.27(1)(c). Given the limited amount of time that the children were in defendant's sole care, we cannot conclude that this finding was against the great weight of the evidence.

On appeal, defendant argues that this case is similar to *Bofysil v Bofysil*, 332 Mich App 232; 956 NW2d 544 (2020). In that case, this Court held that the trial court's finding that an

established custodial environment existed with only the stay-at-home parent was against the great weight of the evidence because the evidence was undisputed that the parent who worked outside the home "arranged her schedule to maximize her time home during [the child's] waking hours," and was involved in raising the child during that time. *Id*. at 243-244. This case is dissimilar to *Bofysil* because the trial court here credited plaintiff's testimony that defendant "did not really spend much time" with the children *while he was home*—the court did not hold defendant's working outside the home against him.

Defendant also argues that the trial court erred because it did not "delv[e] into Appellee-Mother's erratic behavior" when making its findings about the established custodial environment. This Court, however, recently reiterated in *Butters v Butters*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359665); slip op at 5-6, that focusing on a plaintiff's questionable conduct is not properly considered as part of "the established custodial environment equation," but is relevant to the children's best interest. "In determining an established custodial environment, the focus must remain on the *children's* perceptions of their relationships with the parents." *Id*. at ___; slip op at 5. Defendant's argument does not focus on how plaintiff's questionable conduct influenced the children's perception of their relationship with plaintiff, but rather highlights defendant's opinion that plaintiff's actions were selfish and irresponsible.

## C. BEST INTERESTS

Defendant next argues that the trial court erred by failing to make adequate best-interest findings. We agree.

"A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil*, 332 Mich App at 244. MCL 722.23 provides:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

When rendering a custody determination, "the finder of fact must state his or her factual findings and conclusions under each best interest factor." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005). If a particular factor is irrelevant to that determination, the fact finder "need not make substantive factual findings concerning the factor" and need only state on the record its conclusion that the factor is irrelevant. *Pierron*, 486 Mich at 91. When a factor is relevant, the factfinder's "findings and conclusions [on that factor] need not include consideration of every piece of evidence entered and argument raised by the parties," but "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre*, 267 Mich App at 452.

The trial court found that factors a, b, c, e, f, g, and h "favor neither or both parents," but it did not expand on this finding. That is, the court failed to identify which factors favored neither parent and which factors favored both. While it is permissible for a court to merely state on the record that a factor is irrelevant to its custody determination, see *Pierron*, 486 Mich at 91, when it concludes that a factor is relevant, it must make a record "sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings," *MacIntyre*, 267 Mich App at 452. By not providing any rationale for its finding that factors a, b, c, e, f, g, and h "favor neither or both parents," the record is not sufficient for this Court to review the trial court's

findings. See *id*.[1] Accordingly, we vacate the court's custody determination and remand this case for additional fact-finding.[2]

## III. CHILD SUPPORT

## A. STANDARDS OF REVIEW

Discretionary rulings, such as the decision to modify support or to impute income to a party, are generally reviewed for an abuse of discretion. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Id*. A trial court's factual findings underlying its determination of a child support award are reviewed for clear error. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). Questions of statutory interpretation and whether the trial court acted within the child support guidelines are questions of law, reviewed de novo. *Malone v Malone*, 279 Mich App 280, 284; 761 NW2d 102 (2008).

## B. DISCUSSION

Defendant argues that the trial court abused its discretion by imputing income to him for purposes of child support. We disagree.

When child support is ordered, the amount generally will be "determined by application of the child support formula developed by the state friend of the court bureau . . . ." MCL 552.605(2). "Thus, a trial court must presumptively follow the Michigan Child Support Formula (MCSF)." *Stallworth*, 275 Mich App at 284. "[T]he first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income." *Id*. This is generally done "by ascertaining the actual resources of each parent," but "caselaw permits a court to impute income to a parent on the basis of the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. at 284-285 (quotation marks and citation omitted). "[B]efore imputation is permitted, the trial court must determine if the parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn." *Clarke v Clarke*, 297 Mich App 172, 181; 823 NW2d 318 (2012).

The 2021 MCSF Manual, which was effective at the time this case was decided, provides factors to consider when imputing income:

> Use relevant factors both to determine whether the parent in question has
> an actual ability to earn and a reasonable likelihood of earning the potential income.

---

[1] Moreover, it is not clear if the court's statement that some factors "favor neither" party meant that there were factors that were not applicable, which the court would need to explicitly say. See *Pierron*, 486 Mich at 91.

[2] Because we vacate the court's best-interest findings, we decline to address defendant's argument that some of the court's findings were against the great weight of the evidence.

-6-

To figure the amount of potential income that parent could earn, consider the following when imputing an income:

>(a) Prior employment experience and history, including earnings history, and reasons for any termination or changes in employment.

>(b) Educational level, literacy, and any special skills or training.

>(c) Physical and mental disabilities that may affect a parent's ability to work, or to obtain or maintain gainful employment.

>(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

>(e) Availability of opportunities to work in the local geographical area.

>(f) The prevailing wage rates and number of hours of available work in the local geographical area.

>(g) Diligence exercised in seeking appropriate employment.

>(h) Evidence that the parent in question is able to earn the imputed income.

>(i) Personal history, including present marital status, age, health, residence, means of support, criminal record, ability to drive, and access to transportation, etc.

>(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

>(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2021 MCSF 2.01(G)(2).]

"These factors generally ensure that adequate fact-finding supports the conclusion that the parent to whom income is imputed has an actual ability and likelihood of earning the imputed income." *Berger*, 277 Mich App at 725-726.

Defendant argues that the court erred by failing to consider the presence of the children in his home and the impact this had on his earnings. However, defendant's assertion that the trial court failed to consider this factor is inaccurate. The trial court explicitly considered this factor, stating: "**Presence of children in home and impact on earnings:** Defendant only had children in his home during his time off work. This temporary order gives plaintiff primary parenting time for children during school year." Therefore, defendant's argument that the trial court "clearly failed to consider this" factor is without merit.

Defendant also argues that the trial court unfairly punished him for seeking a job that enabled him to be a more active parent. This argument is not fully supported by the record because it is not clear that this new job enabled him to be a more active parent. In his previous job,

defendant would routinely receive six consecutive days off, during which time he could be available to the children around the clock. However, with the new job, defendant admitted that "hour-to-hour wise" he had *less* time to spend with the children. Moreover, defendant's new job would eventually require him to work weekends, which he admitted would likely make it more difficult to exercise his parenting time. Defendant's argument also distorts the trial court's ruling, as it is clear that the court was not imputing income as a means of punishment for seeking a job that helped him be a more active parent. The court even acknowledged that the decision to seek different employment may have been reasonable, but it did not believe that the valid reasons for seeking new employment justified a 50% pay cut. Neither this conclusion nor the trial court's ultimate decision to impute defendant's previous income to defendant were outside the range of reasonable and principled outcomes.

## IV. REMAND TO A DIFFERENT JUDGE

On appeal, defendant briefly requests that the case be remanded to a different judge. We decline to do so.

The basis for defendant's request is that the trial court demonstrated a "clear inability to comply with MCL 722.23 despite multiple opportunities to do so," and thus the court "is not able to objectively weigh and consider the evidence in this case." In other words, defendant lost the first time around, and if and when the case goes back to circuit court, he wants a fresh start with a new judge, as the current one was found to have initially made some mistakes. This has become a more common request from parties over the past few years, and it seems this Court has more frequently granted these requests. But the law requires—and has always required—more than erroneous decisions for a judge to be removed from a case. Indeed, we have long ago said that "[t]he mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). See, also, *Cain v Dep't of Corrections*, 451 Mich 470, 494-496; 548 NW2d 210 (1996), and *Ypsilanti Fire Marshal v Kircher* (*On Reconsideration*), 273 Mich App 496, 554; 730 NW2d 481 (2007). This has always held true because "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a ' "deep-seated favoritism or antagonism that would make fair judgment impossible" ' and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (citations omitted).

This law is well-settled and based upon sound principles. Parties are not entitled to a new judge simply because the judge made some errors in ruling on legal or factual matters. Judges—both trial and appellate—make mistakes, but making mistakes on judicial rulings does not create bias or prejudice. Nor does the law engage in any presumption that a judge cannot set aside the erroneous legal or factual findings once the case is remanded back for further proceedings. Indeed, such a rule would fly in the face of the long-standing doctrine that judges are presumed impartial.

*Armstrong*, 248 Mich App at 597.[3] As the U.S. Court of Appeals for the Sixth Circuit recently recognized in *Cameron v Rewerts*, 841 Fed Appx 864, 866 (CA 6, 2021):

> Our judicial system operates under a fundamental presumption that trial judges are impartial, even when presented with inadmissible or prejudicial information. *Harris v Rivera*, 454 US 339, 346; 102 S Ct 460; 70 L Ed 2d 530 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975) (noting "a presumption of honesty and integrity in those serving as adjudicators"). For that reason, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Liteky v United States*, 510 US 540, 551; 114 S Ct 1147; 127 L Ed 2d 474 (1994).

Michigan is blessed with many excellent trial judges who understand their judicial duty, and if a remand requires a reevaluation of evidence and new findings, we trust—and more importantly the law says—they can do so.

---

[3] This case does not entail a judge who has previously expressed opinions about the case or the issues presented in the case, as occurred in *Ireland v Smith*, 214 Mich App 235, 249-250; 542 NW2d 344 (1995), a case relied upon by defendant. Nor is it similar to *DeRush v DeRush*, 218 Mich App 638, 642; 554 NW2d 322 (1996), where the trial court refused to accept the parties' factual stipulation. Instead, rather than dealing with a situation where a judge previously expressed views on the case or aligned itself with a party which may reveal a "favorable or unfavorable predisposition [that] can . . . be characterized as 'bias' or 'prejudice,' " *Liteky v United States*, 510 US 540, 551; 114 S Ct 1147; 127 L Ed 2d 474 (1994), the issue here is simply whether a remand to a new judge is required when a trial court makes one or more reversible errors. Even when an appellate court considers if a different judge should hear the matter on remand, it should only do so under the standard enunciated in *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997). See *People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (remanding to a different judge because the trial court displayed unprofessionalism and bias to defendant during sentencing, not because of its rulings). Employing that standard, a different judge has typically been ordered on remand not merely because of erroneous findings or rulings, but because of *additional* facts or circumstances that combined with erroneous findings or conclusions, create an appearance of bias or an inability to look at matters anew. See e.g., *People v Pillar*, 233 Mich App 267, 271; 590 NW2d 622 (1998) (remanding to a different judge because the trial court placed blame on counsel and the parties for certain events, was "really upset" with the parties, and made inadequate findings some of which had no factual underpinnings) and *Sparks v Sparks*, 440 Mich 141, 163; 485 NW2d 893 (1992) (remanding to a different judge because the same judge heard, the day prior to the ruling appealed, the divorce case of the reputed lover of one of the parties in *Sparks*, and referenced evidence from that other case). In fact, in *Hill* the Court rejected the argument to remand to a different judge because the trial court had only made erroneous findings.

## V. CONCLUSION

The trial court's finding that there was an established custodial environment only with plaintiff is affirmed. The trial court's decision to impute income to defendant is likewise affirmed. However, we vacate the trial court's findings under the best-interest factors, and remand this case for additional fact-finding consistent with this opinion. On remand, the trial court shall make explicit findings under each factor, and it shall explicitly state if any factor does not apply. Defendant's request to have the case remanded to a different judge is denied.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford