*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINA HUNTER CHAPMAN,

      Plaintiff-Appellant,

v

DERRICK MICHAEL JEROME DENNIS, JR.,

      Defendant-Appellee.

UNPUBLISHED
March 13, 2025
11:02 AM

No. 372289
Washtenaw Circuit Court
LC No. 22-000889-DM

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

In this contentious divorce, plaintiff, Christina Hunter Chapman, appeals of right the trial court's rulings following a four-day bench trial and the Uniform Child Support Order entered after the trial. Specifically, plaintiff contests the trial court's orders concerning custody, parenting time, and child support for the parties' minor child, KD. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff married defendant, Derrick Michael Jerome Dennis, Jr., shortly after the birth of their child, KD. They lived together as a family in Ann Arbor until KD was about 10 months old. In April 2022, plaintiff accepted a position as a radiation oncologist at Baylor College of Medicine in Houston, Texas. Preparing for their move to Houston, plaintiff and defendant signed a lease for an apartment there to begin in May 2022. But then, on April 22, 2022, plaintiff took KD and left the condominium she shared with defendant.

On May 6, 2022, plaintiff filed a complaint for divorce and moved for temporary sole legal custody of KD. She also requested permission to move KD to Houston. On the same date, plaintiff filed a petition for a personal protection order (PPO) against defendant. She attached a statement to her complaint for divorce contending that she left with KD because defendant's conduct placed plaintiff in fear for her safety.

The trial court entered an ex parte order granting plaintiff's motion for temporary sole legal custody of KD. The court also issued a PPO. But the trial court scheduled an emergency hearing and ruled that neither party could change KD's domicile or residence from Michigan without prior

-1-

court approval. After the hearing, the trial court entered an order that granted plaintiff's request to take KD to Texas. The trial court rendered its decision after finding that KD had an established custodial environment with both parents, that the parties agreed during their marriage that plaintiff would accept the job at Baylor and then move there, and that plaintiff was KD's primary caregiver because KD was nursing. The trial court also ordered that defendant could exercise parenting time with KD every other Saturday and Sunday from 1:00 p.m. to 5:00 p.m. in Texas, and that plaintiff would pay for defendant's flights and hotel costs.

Defendant moved to terminate the PPO, and the trial court held two evidentiary hearings in that case. After those hearings, the trial court terminated the PPO, finding that plaintiff's claims of domestic violence were not credible and that her claim that KD primarily received her nutrition from breastmilk was not supported by the evidence.

The trial court held a four-day bench trial on custody, parenting time, and child support in February and March 2024. Thereafter, the parties submitted briefs with proposed findings of fact and conclusions of law, and the trial court issued its opinion and order on May 23, 2024. The trial court found that KD had an established custodial environment with both parents and that it was in KD's best interests for the parties to share joint legal and joint physical custody of KD with equal parenting time. The trial court entered a judgment of divorce on June 13, 2024, and then it entered a Uniform Child Support Order adopting the recommendations of the Friend of the Court (FOC). Plaintiff subsequently appealed of right.

## II. LEGAL ANALYSIS

On appeal, plaintiff argues that the trial court committed clear error when deciding, against the great weight of the evidence, that an established custodial environment with defendant existed. In addition, plaintiff insists the trial court's findings are not in KD's best interests and that the trial court abused its discretion by failing to award child support during an intervening period. We shall address each of plaintiff's arguments in turn.

## A. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff contends that the trial court erred by finding that KD had an established custodial environment with both parents. As decreed by the Child Custody Act, MCL 722.21 *et seq.*, this Court must affirm a child-custody order unless the trial court's factual findings were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994). As our Supreme Court has explained: "MCL 722.28 incorporates three standards of review into the [Child Custody] act: (1) a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction; (2) an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias; and (3) clear legal error exists when a court incorrectly chooses, interprets, or applies the law . . . ." *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citation omitted). Our Legislature has provided the following guidance in MCL 722.27(1)(c) concerning the established custodial environment of a child:

The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Plaintiff claims the trial court made a clear legal error on a major issue by considering KD's environment before plaintiff moved to Houston and from defendant's perspective, rather than from the perspective of KD. Plaintiff is correct that, when deciding whether a change of custody would modify a child's established custodial environment, "it is the child's standpoint, rather than that of the parents, that is controlling." *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). She is also correct that "the relevant point in time for purposes of determining whether an established custodial environment exists is at the time the trial court makes its custody determination[,]" not at some earlier time. *Sabatine*, 513 Mich at 287. But the record reflects that, although both parties testified about their family life before plaintiff and KD moved to Texas, the trial court focused on evidence about KD's environment from her perspective at the time of trial. Accordingly, plaintiff has failed to establish that the trial court made a clear legal error on a major issue. See *Fletcher*, 447 Mich at 881.

We disagree with plaintiff's claim that the trial court's findings on the established custodial environment of KD were against the great weight of the evidence. Plaintiff emphasizes that KD spent 21 months living in Houston during the pendency of the case, which demonstrated that KD's established custodial environment was solely with plaintiff. But the trial court's determination of a child's established custodial environment is not "a simple math equation that [can] be answered by looking at the number of overnights the child[ ] spend[s] with each parent." *Sabatine*, 513 Mich at 293. A child's physical environment is an important factor in the determination of an established custodial environment, but "it is not the only factor, and it is not alone dispositive." *Id*.

Although plaintiff had more time with KD in Texas because defendant lived in Michigan, defendant flew to Texas to visit KD every other weekend as allowed by the trial court's parenting-time order, and he also had video calls with KD twice a week. Defendant testified that each time he exercised parenting time, he flew to Houston with a checked bag that contained KD's toys and a mixer so he could make purees for KD with fresh fruits and vegetables that he would buy when he arrived in Houston. KD especially enjoyed making block towers with defendant and knocking them down when they reached a certain height. Defendant testified that they played in the hotel and at the park, and they went to the aquarium, the water park, and the zoo. KD often said that defendant did a "good job" when he kicked or threw a ball. According to defendant, KD liked to touch his skin, and she called him "Daddy."

Defendant noticed that KD was shy around people she did not know, which he thought was helpful so that she knew to beware of strangers, but he was also teaching KD to say hello to people who greeted her instead of shying away. Defendant explained that he was trying to teach KD to be brave by having her feed animals at the zoo or touch stingrays at the aquarium. Defendant said that he taught KD to say "please" and "thank you," and he believed that it was important to teach her good manners. Defendant also hoped to introduce KD to his family's Baptist faith. Defendant

testified that he believed that KD looked to him for guidance and discipline, and he would correct KD's behavior to ensure her safety.

Contrary to plaintiff's argument, we conclude that ample evidence showed that KD looked to both plaintiff and defendant for guidance, discipline, the necessities of life, and parental comfort. See MCL 722.27(1)(c). Although KD saw defendant less often, she spent time with him regularly, looked at him as her father, and enjoyed her time with him. Evidence also showed that defendant was committed to forging a permanent relationship with KD through his dedicated efforts to visit KD despite having to travel by plane to do so. The trial court's finding that KD had an established custodial environment with both parents was not contrary to the great weight of the evidence.

## B. BEST INTERESTS AND PARENTING-TIME FACTORS

Plaintiff insists the trial court's best-interest and parenting-time findings were against the great weight of the evidence. The trial court has a "duty to ensure that the resolution of any custody dispute is in the best interests of the child." *Harvey v Harvey*, 470 Mich 186, 191-192; 680 NW2d 835 (2004). Thus, the trial court "must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). "[A] trial court's findings on each factor should be affirmed unless the evidence clearly preponderates in the opposite direction." *Kubicki v Sharpe*, 306 Mich App 525, 542; 858 NW2d 57 (2014) (quotation marks and citation omitted). With these deferential standards in mind, we shall take up plaintiff's three arguments about the best-interest factors.

## 1. DOMESTIC VIOLENCE

Plaintiff faults the trial court's consideration of evidence regarding the PPO when domestic violence is defined differently in best-interest factor (k). She insists that the evidence of domestic violence was "uncontested." The Child Custody Act does not define "domestic violence." *Brown v Brown*, 332 Mich App 1, 11; 955 NW2d 515 (2020). But the definition on which the trial court relied focused on whether defendant's conduct would cause a reasonable person to feel frightened or intimidated, which plainly comports with the definition in *Brown*, 332 Mich App at 11. Further, plaintiff did not object to the trial court's consideration of evidence from the PPO hearings, and plaintiff specifically contended in her post-trial brief that she stood by her claim that defendant engaged in domestic violence.

The problem with plaintiff's assertion that defendant's conduct placed her in fear was that the trial court found that her allegations were embellished, that they were not credible, and that the conduct would not place a reasonable person in fear. To be sure, defendant's counsel stipulated that plaintiff felt fearful, but plaintiff's subjective assertion does not establish that plaintiff's fear was reasonable. Defendant testified about plaintiff's allegations, and, when explained in context, it was clear to the trial court that defendant's conduct and statements would not place a reasonable person in fear. We defer to the trial court's credibility determinations. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). This deference is grounded in the principle that a trial court is in a superior position to make judgments about the credibility of the witnesses. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Here, the trial court had the discretion to accept defendant's explanation of the incidents cited by plaintiff, and we conclude that the finding of the trial court was not against the great weight of the evidence.

## 2. MEDICAL NEGLECT

Plaintiff challenges the trial court's finding on best-interest factor (c), "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court ruled that both parties had good jobs and could provide for KD's needs and, although plaintiff frequently had to travel for work, she made sure that KD had adequate childcare.

Plaintiff claims the trial court ignored evidence that defendant failed to give KD her asthma and allergy medications. But KD's medication was prescribed "as needed," and plaintiff admitted that KD's asthma exacerbation could have been caused by something other than defendant's failure to dispense KD's medication during her visit to Michigan several days earlier. The record reveals that defendant kept updated on KD's medical information. Therefore, the evidence did not clearly preponderate against the trial court's conclusion that defendant had the capacity and disposition to provide medical care to KD under MCL 722.23(c). See *Ireland v Smith*, 214 Mich App 235, 242; 542 NW2d 344 (1995).

## 3. BURDEN OF TRAVEL

Plaintiff asserts that the trial court's award of equal parenting time should not have placed the burden of travel on KD and that equal parenting time cannot continue when KD begins school. As plaintiff correctly observes, "The Michigan Parenting Time Guideline recognizes that there are myriad parenting-time arrangements available depending on what will serve the best interests of the children." *Diez v Davey*, 307 Mich App 366, 391; 861 NW2d 323 (2014). Plaintiff argues that the trial court should have given greater consideration to best-interest factor (h), MCL 722.23(h) (KD's home, school, and community record), and parenting-time factor (e), MCL 722.27a(7)(e) (the inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time).

The trial court ruled that the parties should share custody of KD in Texas and Michigan by having KD travel to each state every two weeks. In its opinion, the trial court gave "little weight" to best-interest factor (h) because KD had just turned three years old and she was not yet in school. The trial court also acknowledged the inconvenience of travel between Michigan and Texas under MCL 722.27a(7)(e) but concluded that, at KD's age, it was most important for KD to spend equal time with both parents. The trial court did not ignore the issue of how parenting time would work when KD reached school age. Indeed, the trial court stated that it could revisit the issue when KD began to attend school.

Under MCL 722.28, when we review a trial court's order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." Here, the evidence did not preponderate against the trial court's fact findings, and expert testimony established that children can adapt well to scheduled travel to spend time with both parents. Accordingly, plaintiff is not entitled to relief on this issue.

## C. CHILD SUPPORT

Finally, plaintiff argues that the trial court erred by failing to award her back child support and for failing to order defendant to reimburse her for travel expenses. After the trial court made its custody and parenting-time rulings, it referred the matter to the FOC for a recommendation on child support. The FOC found that plaintiff earned nearly four times as much as defendant, so it did not recommend that the trial court order defendant to pay plaintiff child support for the period when plaintiff had more parenting time with KD in Texas, and it did not recommend that defendant reimburse plaintiff for the travel expenses she paid for defendant to exercise his parenting time in Texas.

In determining child support, "a trial court must presumptively follow the Michigan Child Support Formula (MCSF)." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). The trial court had an obligation to calculate child support in conformity with the MCSF. See MCL 552.605(2). Additionally, the trial court had discretion to "enter an order that deviates from the formula if the court determine[d] from the facts of the case that application of the child support formula would be unjust or inappropriate." *Id*.

The FOC recommendation relied on the MCSF to set the parties' child-support obligations after the trial court's ruling that the parties would equally share physical custody of KD. Plaintiff objected to the FOC recommendation and asked for another review of whether she was entitled to back child support for the time after she moved KD to Texas. Plaintiff also asserted that, because she had primary custody of KD and paid for KD's living and daycare expenses, defendant should have been ordered to pay a portion of those costs from June 1, 2022, the date the trial court ordered that plaintiff could move KD to Texas. But the record reflects that plaintiff stipulated to withdraw her objections to the FOC recommendation. Accordingly, by stipulation, plaintiff agreed with the FOC recommendation and declined to challenge it for its failure to require defendant to reimburse plaintiff.

Under Michigan law, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008). Furthermore, "[a] party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute." *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002). Plaintiff cannot argue that the FOC child-support recommendations and the trial court's child-support order were erroneous when she stipulated to the recommendations in the trial court. See *id*.

Beyond that, the trial court did not abuse its discretion by declining to sua sponte reimburse plaintiff for payments she made for defendant's travel costs that enabled him to exercise parenting time with KD in Texas. When the FOC recommended that the trial court fashion an arrangement allowing defendant to visit KD on alternating weekends in Texas, plaintiff had a gross income of $32,573 per month, whereas defendant had a gross income of $5,992 per month. Plaintiff chose to move KD to Texas so she could work at Baylor, while defendant continued to work in Michigan. The trial court did not find credible plaintiff's claim that she needed to move KD to Texas because of domestic violence by defendant. Indeed, the trial court found that plaintiff made the allegations as a litigation strategy to retain custody of KD in Texas.

Under these circumstances, and because defendant was willing to bear the inconvenience of traveling to Texas every other weekend to exercise parenting time with KD, it was not an abuse of discretion for the trial court to order plaintiff to bear the travel expenses, particularly when she did not make any showing that it was financially infeasible for her to do so. See *Brown v Loveman*, 260 Mich App 576, 604-605; 680 NW2d 432 (2004).

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman