*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAYLOR MEAD,

        Plaintiff-Appellant,

v

MITCHELL ROWE,

        Defendant-Appellee.

UNPUBLISHED
December 22, 2025
11:52 AM

No.  375163
Lenawee Circuit Court
LC No.  20-047743-DP

Before:  ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In this paternity action, plaintiff appeals as of right the order granting defendant joint legal and physical custody of the parties' minor child, LJM. In relevant part, the order also established a parenting time schedule and determined which school LJM would attend. On appeal, plaintiff argues the trial court erred in determining proper cause or change of circumstances existed to modify custody, improperly determined an established custodial environment also existed with defendant, and incorrectly applied the burdens of proof. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In early 2019, the parties briefly dated before defendant married his current wife, GR. Defendant's daughter with GR, ER, was born three months after LJM. The trial court awarded plaintiff sole physical custody of LJM and granted the parties joint legal custody with parenting time to be "as the parties agree."

The parties disagree regarding how much parenting time defendant exercised over the next four years. According to defendant, he exercised parenting time nearly every weekend from either Friday night or Saturday, through Sunday evening, plus at least one overnight during the week, along with "multiple days at a time" during the summer. According to plaintiff, defendant had parenting time for a few hours on Tuesdays along with one weekend overnight per week until the fall of 2023. According to plaintiff, after an incident where LJM burned her hand in a firepit while with defendant, her trust in him diminished and she withheld parenting time.

-1-

At that time, LJM began pre-kindergarten in the Onsted School District (Onsted), which was located less than 10 minutes from defendant and less than a mile from plaintiff. LJM had attendance issues at Onsted. Since March of 2024, LJM had missed 20 days of school, was late 11 days, and was picked up early three days. According to plaintiff, she asked defendant's opinion on LJM changing schools to Addison Community Schools (Addison) and he agreed; however, defendant denied assenting to that change and said that he expressed concerns to plaintiff about how far Addison was.

In the fall of 2024, LJM began attending Addison. Although the parties disagree about how often defendant was exercising parenting time up to this point, in October 2024, plaintiff would only agree to defendant exercising parenting time every other weekend. At that point, defendant moved to change the custody order, requesting joint physical custody and a set parenting-time schedule. At the hearing on defendant's motion, the trial court found the allegations regarding the reduction of defendant's parenting time could constitute a proper cause or change of circumstances to schedule an evidentiary hearing regarding both custody and parenting time.

At the evidentiary hearing, plaintiff alleged defendant exercised sporadic parenting time, was not interested in parenting, and LJM did not want to see defendant. Plaintiff acknowledged LJM had school attendance issues, including six morning absences, five afternoon absences, and 12 tardies at Addison as of November 2024, but asserted the attendance issues had been fixed, and further that defendant did not want to participate in LJM's schooling. Defendant testified that the reduction of his parenting time drastically affected LJM and his family. Defendant also denied that he was an absent parent, asserting plaintiff was the only reason he did not see LJM as much as he wanted. Defendant further maintained that he was heavily involved in LJM's schooling and explained that he had to contact the schools after plaintiff told them that he was not involved. The trial court admitted screenshots of text messages which generally corroborated defendant's testimony along with correspondence that defendant received from both schools.

The trial court issued a written opinion, granting the parties joint legal and physical custody of LJM. The trial court found proper cause or change of circumstances existed to review custody because of LJM's school attendance issues and because plaintiff changed LJM's school over defendant's objection despite their shared legal custody. The trial court found an established custodial environment existed with both parents, reasoning:

> [I]n order to establish an alternating weekend parenting time schedule consistent with [plaintiff]'s request, it must be established by clear and convincing evidence that this is in LJM's best interests. The schedule proposed by [defendant] is for the parties to have equal parenting time. Since this would not change the established custodial environment, he must establish by a preponderance of evidence that this is in LJM's best interests.

The trial court ordered the parties to follow a 2-2-3 parenting time schedule with defendant exercising parenting time from Monday after school to Wednesday morning, plaintiff exercising parenting time from Wednesday after school to Friday morning, and the parties alternating weekends. The trial court further ordered LJM would enroll at Onsted for the 2025-2026 school year unless the parties agreed otherwise. This appeal followed.

## II. STANDARDS OF REVIEW

In custody cases, this Court applies three standards of review. *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of [the] evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Id*. at 644-645 (quotation marks and citations omitted).]

"These three deferential standards of review are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citation omitted). When reviewing a trial court's custody decision, a reviewing court must remember

> that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Id*. at 285 (quotation marks and citation omitted).]

Thus, this Court defers to the trial court on issues pertaining to credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

## III. ANALYSIS

"The Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*., governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *Barretta v Zhitkov*, 348 Mich App 539, 550; 19 NW3d 420 (2023) (quotation marks and citation omitted). The CCA "promotes the best interests of the child by ensuring a stable environment free of unnecessary and disruptive custodial modifications," and "limits a court's power to modify previous judgments or orders regarding custody and parenting time." *Id*. at 550-551.

"Under MCL 722.27, a trial court may modify or amend a previous child custody order or judgment for proper cause shown or because of change of circumstances if doing so is in the child's best interests." *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted). "In the context of a motion for change of custody, a proper cause or change in circumstance is a significant circumstance regarding one or more of the best-interest factors that has the potential for a significant effect on the well-being of the child or children whose custody is at issue." *Id*. at 646 (footnote omitted). See *Vodvarka v Grasmeyer*, 259 Mich App 499, 509-514; 675 NW2d 847 (2003) (addressing the required showing of proper cause or change of circumstances to modify custody). "A party that seeks a change in custody has the initial burden of establishing, by a preponderance of the evidence, that either proper cause or a change of circumstances exists to warrant a change in custody." *Powery v Wells*, 278 Mich App 526, 527; 752 NW2d 47 (2008). See MCL 722.27(1)(c).

## A.  PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

On appeal, plaintiff first argues the trial court erred in finding proper cause or a change of circumstances to warrant modifying custody. We disagree.

The trial court held a hearing on defendant's motion, and found the alleged reduction of his parenting time by over 50% to alternating weekends could constitute a proper cause or change of circumstances to review custody and parenting time. After an evidentiary hearing, in its written order, the trial court determined defendant previously exercised significant parenting time until the parties' recent disagreement. The trial court further found proper cause existed to review custody because of LJM's school attendance issues and because plaintiff changed LJM's school over defendant's objection despite their shared legal custody.

Plaintiff argues the trial court incorrectly held an evidentiary hearing not based on the parties' existing judgment, but instead on defendant's reduced parenting-time allegations, which were not supported at the evidentiary hearing. While the parties disputed defendant's parenting time, the trial court determined the evidence tended to corroborate defendant's version, finding that until recently, LJM generally had "regular and consistent" parenting time with defendant every weekend, which sometimes extended through Sunday nights, and also on Tuesdays. This Court defers to the trial court regarding the parties' credibility. See *Berger*, 277 Mich App at 705. While the initial parenting-time order was "as the parties agree," it was clear the parties were no longer in agreement regarding parenting time, and contrary to plaintiff's assertions, unilaterally changing defendant's parenting time from three to four nights a week to every other weekend is a change of circumstance that "could have a *significant* effect" on LJM's well-being. *Vodvarka*, 259 Mich App at 513.

Further, after the original custody judgment was entered, LJM enrolled in school and was struggling significantly with attendance. In the previous school year, LJM had about 20 absences through March during plaintiff's parenting time, which plaintiff seemingly disregarded, explaining that because it was pre-kindergarten, LJM did not need to be there at all. On appeal, plaintiff argues school difficulties are an insufficient basis to consider modifying custody; however, "proper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka*, 259 Mich App at 511. Despite defendant's objection, plaintiff transferred LJM to a

school farther away from both parties, effectively preventing defendant from exercising weekday overnights with her or feasibly transporting her to school. And, plaintiff failed to list defendant as an emergency contact at LJM's new school. Moreover, according to the school, as of November 2024, LJM was "considered chronically absent," and a letter was sent home noting concerns and explaining how LJM's education would suffer. Plaintiff acknowledged that after changing schools, LJM had six morning absences, five afternoon absences, and 12 tardies, but testified that her attendance had since improved without offering additional evidentiary support.

Plaintiff further argues her "single legal custody violation" in changing LJM's school was insufficient to warrant revisiting custody; however, the trial court found plaintiff "used her position as the sole physical custodian of LJM to infringe upon [defendant]'s right to be involved in important decisions" and acted to limit defendant's involvement in LJM's life. Review of the record demonstrates that the trial court's findings in this regard were not against the great weight of the evidence.

We note that plaintiff also argues the trial court should have "limited itself to entering a specific parenting time that retained" plaintiff's sole physical custody and requests this Court remand for an evidentiary hearing to set a parenting time schedule. Plaintiff ignores that the trial court's order did set a parenting time schedule. Plaintiff seems to conflate defendant's request to modify custody and his request to modify parenting time into one issue, but misunderstands the analysis. Plaintiff incorrectly asserts that because defendant "sought fifty-fifty parenting time," which is the "epitome of joint physical custody," the *Vodvarka* standard automatically applies.

It is true that different standards apply when considering whether proper cause or change of circumstances exist regarding requests for modification of parenting time. See *Shade v Wright*, 291 Mich App 17, 25-29; 805 NW2d 1 (2010) (addressing the required standards to show proper cause or change of circumstances to modify parenting time). Physical custody "refers to a child's living arrangements," while parenting time "is the time a child spends with each parent." *Lieberman v Orr*, 319 Mich App 68, 79-80; 900 NW2d 130 (2017). "Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Shade*, 291 Mich App at 28-29.

> Therefore, although normal life changes typically are insufficient to establish the proper cause or change of circumstances required to proceed to consideration of a child custody order, such changes may be sufficient for a court to consider modification of a parenting-time order unless the requested change would alter the established custodial environment. [*Lieberman*, 319 Mich App at 83.]

Accordingly, if a request to modify parenting time "involves a change that alters an established custodial environment, then the more stringent framework from *Vodvarka* will apply." *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). "If, however, the request involves a change to the duration or frequency of parenting time, the less stringent standard discussed in *Shade* will apply." *Id*.

"If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established

custodial environment will not have changed." *Rains v Rains*, 301 Mich App 313, 340; 836 NW2d 709 (2013) (quotation marks and citation omitted). In this case, the trial court found an established custodial environment existed with both parties. Accordingly, the trial court found that a parenting-time order granting the parties equal parenting time would not change the established custodial environment in contrast to a parenting-time order granting defendant only alternating weekends. See *Powery*, 278 Mich App at 528 (holding a modification of parenting time that would relegate an equally active parent to a "weekend parent" would amount to a change in the child's established custodial environment) (quotation marks omitted). Because the evidence supporting the trial court's determination does not "clearly preponderate[] in the opposite direction," the trial court's findings in this regard are not against the great weight of the evidence. *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted).

And, given that defendant's request to modify parenting time would not alter the established custodial environment, the *Shade* standard applied. See *Shade*, 291 Mich App at 23. See also *Kaeb*, 309 Mich App at 570. Seeing as we have already determined proper cause or change in circumstances to modify custody was sufficiently demonstrated under the higher *Vodvarka* standard, it necessarily follows that the less stringent *Shade* standard for modifying parenting time is also met. Therefore, the trial court's conclusion that defendant showed sufficient proper cause or a change of circumstances to warrant modifying custody and parenting time was not against the great weight of the evidence.

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff next argues the trial court erred in determining defendant had an established custodial environment with LJM. We disagree.

"Before modifying a custody order or a parenting-time order, a court must first consider whether the moving party has demonstrated by a preponderance of the evidence a change of circumstances or proper cause." *Barretta*, 348 Mich App at 552. "The next step in considering a motion for a custodial or parenting time change requires the court to consider the child's established custodial environment." *Id*. "An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Moote v Moote*, 329 Mich App 474, 484; 942 NW2d 660 (2019) (quotation marks and citation omitted). Specifically,

> [t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

"[W]hether a custodial environment has been established is an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). Moreover, "[a]n established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Berger*, 277 Mich App at 707.

Here, the trial court found that an established custodial environment existed with both parents because LJM looked to them "for guidance, discipline, the necessities of life, and parental comfort." On appeal, plaintiff argues the trial court erred because, similar to *Ireland v Smith*, 214 Mich App 235; 542 NW2d 344 (1995), aff'd as mod 451 Mich 457 (1996), an established custodial environment existed solely with her as defendant "never had the sole obligation of taking care of the child for any extended period of time because his relatives did that for him." In *Ireland*, this Court affirmed the trial court's finding that an established custodial environment existed with the plaintiff where the child lived with the plaintiff for most of the child's life. The child's maternal grandmother provided most of the child's necessities and, although the defendant's recent visits were regular and satisfactory, "he never had the sole obligation of taking care of the child for any extended period." *Ireland*, 214 Mich App at 242-243.

Plaintiff argues the trial court's findings that LJM spent significant time with both parties was not supported by the record. Contrary to plaintiff's assertions, there was evidence in the record that LJM spent sufficient time with both parties and she looked to them both for guidance, discipline, the necessities of life, and parental comfort. Plaintiff asserts defendant relied on relatives to care for LJM, and would rely on them to transport LJM to school; however, plaintiff mischaracterizes defendant's testimony. Defendant testified that his parents lived nearby and were another form of support; nevertheless, he brought ER to school every day and would do so for LJM. Moreover, GR, defendant's wife, testified defendant was a very involved parent. At the evidentiary hearing, plaintiff asserted defendant did not want to be involved in LJM's schooling or birthdays, but the record indicated the opposite and, as discussed, the trial court found proper cause or change of circumstances existed to warrant an evidentiary hearing to consider modifying custody.

Throughout the proceedings, plaintiff provided no evidence defendant was an absent parent beyond her testimony, which was generally contradicted by defendant's direct evidence. Plaintiff asserts defendant's evidence showed he could only account for "11 midweek overnights"; however, the number of overnights alone is not determinative of whether an established custodial environment exists. See *Sabatine*, 513 Mich at 293 n 5. Regardless, the trial court found that while the parties disagreed regarding the amount of parenting time defendant exercised, defendant's text messages "tended to corroborate his version" of events and we defer to the trial court regarding the parties' credibility. See *Berger*, 277 Mich App at 705.

Further, the trial court found that it was "clear from the testimony and other evidence that each party exercises his or her parenting time independently of the other," and that LJM looked to the parent she was with for comfort and guidance. Consequently, we cannot say the evidence "clearly preponderates in the opposite direction" from the trial court's finding that an established custodial environment existed with both parties. See *Merecki*, 336 Mich App at 645.

## C. BURDENS OF PROOF

Finally, plaintiff argues that the trial court erred by applying the incorrect burdens of proof to the parties. We disagree.

The applicable burden of proof in child custody matters presents a question of law that this Court reviews de novo. *Griffin v Griffin*, 323 Mich App 110, 118; 916 NW2d 292 (2018). "When

considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child." *Sabatine*, 513 Mich at 286 (quotation marks and citation omitted). "If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests." *Id*. (quotation marks and citation omitted). The clear and convincing evidence "standard also applies when there is an established custodial environment with both parents" and the proposed change would modify it. *Foskett*, 247 Mich App at 6. "On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Sabatine*, 513 Mich at 286 (quotation marks and citations omitted).

As discussed, the trial court found that an established custodial environment existed with both parties and this finding was not against the great weight of the evidence. Because defendant proposed an equal parenting time schedule, the trial court found defendant needed to establish this was in LJM's best interests by a preponderance of the evidence because it would not change LJM's established custodial environment. In contrast, because plaintiff proposed an alternating weekend schedule, she needed to establish this was in LJM's best interests by clear and convincing evidence because it *would* change LJM's established custodial environment. Plaintiff argues this application was clear legal error because the original custody judgment awarded her sole physical custody, and defendant "sought to substantially reduce [her] court-ordered parenting time by requesting fifty-fifty custody."

We note plaintiff did not have specific court-ordered parenting time, as she asserts, but had parenting time "as the parties agree," and regardless, physical custody is a distinct concept from a child's established custodial environment. Physical custody "refers to a child's living arrangements," *Lieberman*, 319 Mich App at 79; while an "established custodial environment is the environment in which over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018) (quotation marks and citation omitted). "An established custodial environment may exist in more than one home" and "a trial court must not presume an established custodial environment by reference only to the most recent custody order but rather must look into the actual circumstances of the case." *Id*. at 361, 370 (quotation marks and citations omitted). "A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Berger*, 277 Mich App at 707. Accordingly, plaintiff's argument fails because defendant was not automatically held to a higher burden of proof regarding the established custodial environment simply because plaintiff had sole physical custody.

Relatedly, plaintiff argues the trial court committed clear legal error when it applied the clear and convincing evidence standard to her attempt to "continue the current order," despite MCL 722.27(1)(c) placing that burden on the moving party. While plaintiff requested the trial court not modify physical custody, she also requested the trial court enter an order granting defendant alternating weekend parenting time from Friday until Sunday. Because the trial court found this would alter the established custodial environment, it held plaintiff to the higher burden of proof. See *Foskett*, 247 Mich App at 8 (explaining that when an established custodial

environment exists with both parents, neither parent's "established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the child[]'s best interests."). Comparatively, because under defendant's request, LJM's joint established custodial environments would remain the same, the trial court did not have to find clear and convincing evidence that the change in parenting time served her best interests. Instead, the determination required only proof by a preponderance of the evidence. See *Lieberman*, 319 Mich App at 84; *Shade*, 291 Mich App at 23. Accordingly, the trial court did not commit clear legal error because it properly applied the burdens of proof.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica